# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# STATESBORO DIVISION

JOHN M. BROWN,      )
                )
    Claimant,     )
                )
v.                  )    Case No. CV608-036
                )
MICHAEL J. ASTRUE,    )
*Commissioner of Social Security*,   )
                )
    Defendant.    )

## REPORT AND RECOMMENDATION

Claimant John Brown appeals the Social Security Commissioner's denial of his application for widower's disability insurance benefits. (Doc. 1.) For the reasons set forth below, the Court should **AFFIRM** the commissioner's decision.

## I.   BACKGROUND

Born in 1947, Brown has either a seventh or eighth grade education. (Tr. 27, 106, 144, 198.) He has held various jobs, including glass working, carpentry, and farming. (Tr. 79, 101, 203.) He stopped working in 2003 due to back pain, but he states that he became disabled

in March, 1998.  (Tr. 203.)  The Social Security Commissioner denied his

disability application, first on November 11, 2003, and again upon

reconsideration on July 19, 2005.  (Tr. 49, 24.)  An Administrative Law

Judge ("ALJ") held a hearing on February 8, 2007, and issued an

unfavorable decision on June 19, 2007, denying claimant's benefits

application.  (Tr. 24, 32.)  After the appeals council rejected claimant's

request for review, the ALJ's decision became the final decision of the

Commissioner.  (Tr. 3.)  Claimant then filed a complaint in this Court

contending that the ALJ erred in reaching his decision.

## II.  <u>ANALYSIS</u>

### A.  **Standard of Review**

A multi-step process figures into the ALJ's decision.  Summarized,

[a] person who applies for Social Security disability benefits must prove her disability. *See* 20 C.F.R. § 404.1512.  The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). In steps one and two, the claimant must show that [he] has not engaged in substantial gainful activity; and [he] must prove a severe impairment or combination of impairments.  *Jones*, 190 F.3d at 1228.  In step three, the impairment is compared to listed impairments; if the impairment meets or equals a listed impairment, disability is automatically established. *Id*. If step three's impairment listing does not establish disability, in step four the claimant must show an inability to perform past relevant work. *Id*. If the claimant makes a sufficient showing of inability to

perform past relevant work, in step five the Commissioner bears the burden of showing other available work that claimant is able to perform. *Id.*

*Dixon* v. *Astrue*, 312 F. App'x 227, 227-28 (11th Cir. 2009) (footnote omitted).

This Court must affirm the ALJ's decision if his conclusions are supported by substantial evidence and proper application of the governing legal standards. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is something more than a mere scintilla, but less than a preponderance." *Dyer*, 395 F.3d at 1210 (quotes and cites omitted). It "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotes and cites omitted). And if substantial evidence supports the decision, the Court will affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Id.* at 1158-1159. The Court cannot substitute its own judgment for the Commissioner's. *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). That is, it is

the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir.1971). Similarly, it is the responsibility of the Commissioner to draw

> inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir.1963).

*Lewis v. Astrue*, 2009 WL 464264 at * 2 (M.D. Fla. Feb. 24, 2009) (unpublished). That is why this Court cannot reweigh the evidence, but rather "is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled." *Id.* The Court need only "satisfy itself that the proper legal standards were applied and legal requirements were met." *Id.* (citing *Lamb v. Bowen,* 847 F.2d 698, 701 (11th Cir.1988)).

## B.    The ALJ's Determination

The ALJ found that claimant satisfied step one of the five-step analysis because he had not engaged in substantial gainful activity at any time relevant to the decision. (Tr. 26.) At step two, the ALJ concluded that Brown "has the following severe impairments: low back pain, mild degenerative joint disease of the lumbar spine, chronic pain disorder, borderline intellectual functioning, anxiety, depression, and [a] history of alcohol abuse." (*Id.*) Despite finding that the impairments were "severe," the ALJ compared Brown's impairment to a set of listed impairments and concluded that Brown does not meet the step three

criteria. (Tr. 28.) "After careful consideration of the entire record, the [ALJ found] that [Brown] . . . has no exertional limitations" and despite his borderline intellectual functioning and mild depression and anxiety, "he retains the ability to meet the basic mental demands of competitive, remunerative, *unskilled* work on a sustained basis." (Tr. 28-29 (emphasis added).) Based upon the residual functional capacity assessment, the ALJ found at step four that Brown could not "meet the mental demands of his past relevant work," and thus could not return to work as a farmer or carpenter, which are defined as semi-skilled to skilled work. (Tr. 31.) At step five, however, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.*) Specifically, he found that Brown could work as a hand sander, wiper, or blow-off worker. (Tr. 32.)

## C.   Substantial Evidence Review

Brown contends that the ALJ erred in (1) failing to utilize a vocational expert given his nonexertional limitations,[1] (2) failing to find him disabled under Listing 12.05, and rejecting the opinions of examining physicians as to his disability in favor of those of non-examining state agency reports. (Doc. 15 at 3.) In addition, he states that the ALJ erred in failing to find him disabled under Medical-Vocational Rule 202.02. (*Id.* at 9.)

### 1. *Vocational Expert*[2]

As discussed above, "[i]f the claimant is unable to do past relevant work, the examiner proceeds to the fifth and final step of the evaluation process to determine whether in light of 'residual functional capacity,' age, education, and work experience the claimant can perform other work." *Wilson*, 284 F.3d at 1227. Brown contends that the ALJ should have introduced the testimony of a vocational expert as to the existence of jobs he could perform in the national economy since Brown claimed

---

[1] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, and pulling. 20 C.F.R. § 416.969a(b); SSR 83-10. Nonexertional activities include mental, postural, manipulative, sensory, and environmental matters that do not directly affect the primary strength activities. 20 C.F.R. § 416,969a(c); SSR 83-10.

[2] The Court will address claimant's arguments in the order raised rather than in the order imposed by the five-step process.

nonexertional limitations (i.e., borderline intellectual functioning, pain disorder, anxiety, and depression). (Doc. 15 at 5.)

During the state portion of the disability review process, the Disability Adjudication Services agency referred claimant to Steve Chester, Ph. D., for a psychological consult. (Tr. 144.) Chester concluded that Brown is illiterate and has a full-scale I.Q. between 66 and 74, which he described as borderline intellectual functioning. (Tr. 147.) In addition, Chester diagnosed pain disorder, anxiety disorder, depressive disorder, nicotine dependence, and alcohol abuse. (Tr. 148.) The ALJ, aware of Dr. Chester's diagnoses, applied the Medical-Vocational Guidelines ("grids") as a framework at step five. (Tr. 32.) He relied upon section 204.00, which applies when a claimant suffers from solely nonexertional limitations. (Tr. 31.) He found that Brown's "ability to perform work at all exertional levels has been compromised by [his] nonexertional limitations. However, [the] limitations have little or no effect on the occupational base of unskilled work at all exertional levels." (Tr. 32.) That is, the ALJ found that claimant can perform unskilled work at all exertional levels.

The ALJ next cited to the "occupational recommendations of the State Agency as to other jobs that exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity, according to the Dictionary of Occupational Titles (D.O.T.)." (*Id.*) The state agency concluded, like the ALJ, that Brown's nonexertional mental restrictions permitted him to perform "simple unskilled work." (Tr. 116.) Despite a lack of any transferable skills, and excluding jobs involving the "general public or close teamwork," the agency recommended that Brown work as a hand sander, wiper, or blow-off worker. (*Id.*) The ALJ adopted the state agency's determination and noted that such work exists in significant numbers in the general economy. (Tr. 32.)

Claimant contends that the ALJ's reliance upon the grids and the state agency's determination were inappropriate. Citing to *Wilson*, he argues that if nonexertional impairments exist, the ALJ must introduce a vocational expert's testimony of the existence of jobs in the national economy that the claimant can perform. *Wilson*, 284 F.3d at 1227 ("If nonexertional impairments exist, the ALJ may use the Medical-Vocational Guidelines as a framework to evaluate vocational factors, but

must also introduce independent evidence, preferably through a vocational expert's testimony, of existence of jobs in the national economy that the claimant can perform."). *Wilson*, however, qualified the demand for independent evidence by stating that the use of a vocational expert is *preferred*, not required. Moreover, *Wilson*'s treatment of the rule was perfunctory, since the ALJ in that case actually called a vocational expert. In a more recent case, the Eleventh Circuit more thoroughly explained when vocational experts are required:

> The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform. However, "[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills." *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir. 1985) (emphasis added) (citing *Broz v. Schweiker*, 677 F.2d 1351, 1361 (11th Cir. 1982), *adhered to sub nom. Broz v. Heckler*, 711 F.2d 957 (11th Cir. 1983)); *see also Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999); *Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996); *Martin v. R.R. Ret. Bd.*, 935 F.2d 230, 234 (11th Cir. 1991); *Walker v. Bowen*, 826 F.2d 996, 1002-03 (11th Cir.1987); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). . . . If *either* condition exists, the ALJ was required to consult a vocational expert

*Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004) (alterations and emphasis in original).

The first inquiry, whether a claimant can perform the "full range of work" at a residual functional level, only applies to exertional limitations, *id.*, which the ALJ explicitly found were not present in this case. (Tr. 28 ("He has no exertional limitations.").) Consequently, a vocational expert was only required if Brown's nonexertional limitations "significantly limit h[is] basic work skills." *Phillips*, 357 F.3d at 1243.

Nonexertional limitations significantly limit basic work skills when they prevent a claimant from performing a "wide range" of work at a given RFC level, which includes both the exertional (light, medium, heavy, and very heavy work) and nonexertional (unskilled, semiskilled, and skilled work) components. *Id.* For example, in *Vuxta v. Comm'r of Soc. Sec'y*, 194 F. App'x 874, 878 (11th Cir. 2006), the Eleventh Circuit noted that reliance on the grids would be appropriate if the ALJ made an explicit determination that claimant's nonexertional limitations did not preclude her from performing a wide range of jobs at the light, unskilled RFC level. Here, there are no exertional limitations, so the inquiry, as noted by the ALJ's reliance upon section 204.00 of the grids, is whether

claimant's nonexertional impairments prevent him from performing a wide range of work.[3]

The ALJ found that claimant's nonexertional impairments "have little or no effect on the occupational base of unskilled work at all exertional levels." (Tr. 32.) When nonexertional impairments have little or no effect on the occupational base of unskilled work, a claimant can still perform a wide range of work and thus a vocational expert is not required. *Williams v. Astrue*, 2009 WL 902485, at *5 (M.D. Ala. Mar. 31, 2009) (citing Social Security Rulings ("S.S.R.") 83-14 and 85-15, which indicate that there are thousands of unskilled jobs at all exertional levels);[4] *see Koenig v. Astrue*, 2008 WL 850032 at *6 (E.D. Cal. Mar. 28, 2008) (where claimant's nonexertional limitations would not "significantly erode" the full range of unskilled jobs, SSR 85-15 permits

---

[3] "The residual functional capacity to perform heavy work or very heavy work includes the functional capability to work at the lesser functional levels as well, and represents substantial work capability for jobs in the national economy at all skill and physical demand levels." 20 C.F.R. § 404, Subp't P. Appx. 2, Rule 204.00.

[4] Claimant argues that the ALJ's finding that his nonexertional impairments were "severe" necessarily means that he found the "impairments would preclude a wide range of employment, as a 'severe' impairment, by definition, 'significantly limits an individual's physical or mental ability to do basic work activities.'" (Doc. 15 at 5 (citing 20 C.F.R. § 416.920(c)). The argument misses the mark. While Brown suffers from severe impairments that hamper his ability to perform skilled or semi-skilled work, they do not preclude his ability to perform unskilled work at *any* exertional level; thus they do not preclude a "wide range" of employment.

an ALJ to proceed without a vocational expert). Thus, contrary to claimant's assertion, the ALJ's reliance upon the grids, buttressed by the state agency's independent vocational analysis, was satisfactory in this instance.

### 2. *Listing 12.05C*

Claimant next contends that the ALJ erred in finding that he did not meet Listing 12.05 (specifically paragraph C), which provides:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

> The required level of severity for this disorder is met when [following] requirements . . . are satisfied:

> C. A valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 CFR § 404, Subp't P. Appx. 1, § 12.05. Thus, he contends that the ALJ was required to find him disabled at step three of the five-step analysis.

Brown's verbal and performance I.Q. were both over 70 on the Wechsler Adult Intelligence Scale, which is in the Borderline range of intelligence. His full scale I.Q. was just under 70, which indicates slight

mental retardation. (Tr. 146.) Dr. Chester noted that Brown's "achievement score in the area of Math was within the Borderline range. However, his achievement scores in the areas of Reading and Spelling were far below the Borderline range. His achievement scores are felt to be reliable and indicated that he is illiterate." (Tr. 148.) Dr. Chester concluded, however, that Brown was within the Borderline range of intelligence. (*Id.*) Taking Chester's findings into account, the ALJ found:

> Despite claimant's full scale I.Q. score which suggested he was functioning in the mildly retarded range and test scores which suggested he was functionally illiterate, Listing 12.05 is not met or equaled because Dr. Chester opined the claimant's true level of functioning was in the borderline range. Further, the record indicates that the claimant has successfully worked in the past doing semi-skilled to skilled work as a construction worker and farm worker. Additionally, the claimant does not have other mental or physical impairment(s) that imposed an additional and significant work-related limitation of functioning. The claimant reported persistent feelings of depression and anxiety, but Dr. Chester noted he was not psychotic or suicidal on the day [of] the evaluation. He was also alert and oriented and memory and concentration was intact. Also, there is no evidence that the claimant is receiving any formal psychological treatment or taking any psychotropic medications. The claimant has allegations of chronic low back pain, but objective findings shows only "mild" degenerative disc changes.

(Tr. 28.)

Brown argues that the full scale I.Q. of 69 mandated a finding of disabled. (Doc. 15 at 7.) But "a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record . . . [including] daily activities, behavior, work history, and other relevant evidence." *Lowery v. Sullivan*, 979 F.2d 835, 837-38 (11th Cir. 1992) (citing *Popp v. Heckler*, 779 F.2d 1497, 4199 (11th Cir. 1986)). Since Dr. Chester himself discounted a finding of mental retardation, and since claimant had a history of performing skilled and semi-skilled labor,[5] the ALJ's determination was supported by substantial evidence. *See Davis v. Astrue*, 2008 WL 2939523 at *2-3 (M.D. Ala. July 25, 2008) (unpublished) (affirming ALJ's rejection of Listing 12.05C where psychologist found that claimant, who had performance and full scale I.Q.s below 70, was actually within the borderline intellectual functioning category and her past work history, had some training in cosmetology and secretarial skills, had a driver's license, had completed the twelfth grade, and had performed semi-skilled employment); *see also Bischoff v. Astrue*, 2008 WL 4541118 (S.D. Fla.

---

[5] Brown admitted in work history questionnaires that while working as a carpenter he was a lead worker who supervised, hired, and fired employees, and regularly used machines and technical knowledge and skills, including taking measurements and making calculations. (Tr. 81.) And as a farmer he also supervised other workers. (Tr. 80.)

Oct. 9, 2008) (unpublished) (affirming ALJ's determination that 12.05 was not met where claimant had previously worked as a parts manager and automobile mechanic, jobs that required technical skills, supervised other people and there was also some evidence that he attempted to fake his I.Q. based upon several inconsistencies in his testimony and between his testimony and the record).[6]

### 3.    *Dr. Chester's Opinion*

Claimant contends that the ALJ failed to accord sufficient weight to Chester's opinion as a treating physician.    (Doc. 15 at 8-9.) Specifically, he states that Dr. Chester diagnosed him with borderline intellectual functioning and illiteracy, pain disorder, anxiety disorder, and depressive disorder, but the ALJ inappropriately discounted his opinion. (*Id.*)

"Generally, the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians' [opinions] are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on

---

[6] Since substantial evidence supports the ALJ's determination that Brown is not mentally retarded, the Court declines to consider whether the ALJ erred in determining whether Brown suffered from a "physical or other mental impairment imposing an additional and significant work-related limitation of function" as required by Listing 12.05C. (Doc. 15 at 7-8.)

issues within the area of expertise than those of non-specialists." *McNamee v. Soc. Sec. Admin.*, 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2) & (5)). However, an ALJ can accord more or less weight to a particular source if there is good cause to do so. *See Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991).

Chester, however, was not a treating physician -- he was a one-time examiner. The opinions of a one-time examiner are not entitled to special weight in a disability determination. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986). Moreover, claimant radically mischaracterizes the ALJ's opinion and Dr. Chester's report. Dr. Chester never suggested that Brown is incapable of working, and the ALJ accepted Dr. Chester's diagnoses but found, based upon all the evidence of record, that those nonexertional limitations were not disabling. For instance, the ALJ acknowledged that "[w]hile the claimant may experience some mild difficulties with depression and anxiety, there is no evidence to conclude that he is unable to follow basic and simple instructions, communicate, and pursue his daily living activities (as demonstrated by his reported activities of daily living)." (Tr. 30.) Moreover, he found that claimant's

allegation of severe back pain was "not entirely credible" and that his borderline intellectual functioning never got in the way of his past jobs. (Tr. 28, 30.) Accordingly, this ground is without merit.

### 4. *Medical-Vocational Rule 202.02*

Claimant finally contends that the ALJ should have found at step four that he was disabled under Medical-Vocational Rule 202.02, which applies to those limited to light work as a result of severe medically determined impairments.[7] (Doc. 15 at 9-10.) He states:

> Despite the ALJ's finding of no exertional limitations, Plaintiff would draw the Court's attention to the X-ray readings submitted to the Appeals Council, which document degenerative disc disease. Further, the consultative physical examination of Dr. Hein establishes that Claimant has mildly decreased lumbar motion worst [when] in rotation, mildly decreased neck motion worst in extension, tight hamstrings, limiting lying straight leg raise, and mildly decrease sub-talor motion. Assuming that the degenerative disc disease would limit Plaintiff to light work as seems customary in back pain cases when there is supporting testimony and objective evidence as here, Medical-Vocational Rule 202.02 would

---

[7] The applicable grid section for a *light work* RFC is:

| Rule | Age | Education | Previous work experience | Decision |
|------|-----|-----------|--------------------------|----------|
| 202.02 | Advanced Age | Limited or Less | Skilled or semiskilled-skills not transferable | Disabled |

20 C.F.R. § 404, Subp't P. Appx. 2, Rule 202.02 (altered for readability).

require a finding of disability without regard for Plaintiff's mental impairments.

(*Id.* at 10 (citations omitted).)   In essence, he contends that substantial evidence does not support the ALJ's determination that Brown has no exertional limitations.

The ALJ discussed the x-ray and Hein's examination and report:

[In 2006] the claimant was seen in the emergency room complaining of low back pain.  He stated he had been doing some heavy lifting.  Findings revealed palpable spasms over the dorsal lumbar spine; otherwise, the examination was within normal limits.  His gait was normal.  X-rays of the lumbar spine demonstrated degenerative joint disease.  The claimant was diagnosed with low back pain (Exhibit 3E).

On April 26, 1007, the claimant underwent a disability consultative evaluation performed by Dr. Douglas P. Hein.  He presented with multiple orthopedic complaints.  He stated his legs gave out, his feet hurt and would get hot, and his hands and elbows were sore.  He reported no treatment.  On examination, Dr. Hein noted mildly decreased range of motion of the lumbar spine and mildly decreased neck motion, and mildly decreased sub-talor motion; otherwise, the physical examination was essentially normal.  It was questionable whether there was stigmata of some early alcoholic induced neuropathy with course tremor and perhaps minimal discoordination.

Based on his examination and review of medical records and x-rays, Dr. Hein opined that claimant had unlimited ability for lifting/carrying, standing/walking and sitting.  He could occasionally balance, stoop, crouch, kneel, crawl and climb ramp/stairs (but never climb ladder, rope and scaffolds).  He could constantly use left and right upper extremities for reaching, handling, fingering and feeling.  He had unlimited ability for

18

seeing, hearing and speaking. The claimant had no environmental restrictions (Exhibit 4F).

(Tr. 27.) Despite Hein's suggested restrictions, the ALJ found that Brown has no exertional limitations:

> [T]he claimant testified and reported in the record (Exhibit 2F/12) that he lives alone. He can perform some household cleaning chores. He is able to prepare his own meals and use kitchen appliances without assistance. He grocery and general shops with his family, attends church once a week, watches television, and visits with family and friends on a regular basis. . . .
>
> The claimant alleges that he is unable to work due to constant back pain with inability to stand more than 20 to 30 minutes, sit more than 30 minutes, and lift/carry more than 10 pounds. The undersigned finds the objective medical evidence fails to substantiate that the claimant has a medically determinable impairment(s) that causes such limitations as he alleges. X-rays of the lumbar spine showed only "mild" degenerative changes. Further, consultative examinations were essentially normal. Consultative examinations in 2003 and 2005 showed some mild decreased range of motion of the lumbar spine, but the claimant ambulated functionally without an assistive device. No muscle atrophy of the upper and lower extremities was noted, and sensation was intact in all four extremities. Consultative examination in 2007 showed some "mild" decrease in lumbar motion and neck motion and sub-talor motion; otherwise there was full motion of all major and minor joints. He had good grip strength, good pinch strength, and normal dexterity and mobility undressing. Dr. Hein noted the claimant had decreased neck motion and it was questionable as to whether there was stigma[ta] of some early alcoholic induced neuropathy and minimal discoordination, but otherwise he noted [n]o evidence of a physical impairment. The [ALJ] also notes the claimant denies any current treatment or taking any narcotic based medications, in spite of his complaints of disabling pain and functional limitations. . . .

At the initial level, the State Agency consultants determined the claimant had no exertional limitations (Exhibit 3F). The [ALJ] gives great weight to the medical opinion of the State Agency consultants because it is fully justified and consistent with other substantial objective evidence in the case record, specifically the medical opinions of Dr. Novack (Exhibit 2F) and Dr. Hein (Exhibit 4F).[8] However, I discount Dr. Hein's restrictions that the claimant can only occasionally climb, balance, stoop, crouch, kneel, and crawl, in light of objective findings that fail to support his conclusion. Dr. Hein's physical examination was essentially normal, except for "mild" objective findings.

(Tr. 30-31 (footnotes added).)

While it is true that the ALJ minimized Hein's restrictions and the results of the x-ray, there is substantial evidence supporting his finding. The x-ray showed degenerative disc disease, but Dr. Hein noted that the

---

[8] The ALJ discussed Dr. Novack's disability evaluations:

[C]laimant underwent [two] disability consultative evaluations performed by Dr. Steven J. Novack. He presented with a chief complaint of lower back pain and bilateral leg numbness for the past 10 years secondary to an injury he sustained when he fell down a flight of stairs. He also stated he was involved in a motor vehicle accident 6 years ago with an exacerbation of back pain. There was no lumbar surgery reported. The claimant described pain across the lower back, constant but variable deep aching pain, and intermittent numbness of the legs bilaterally with pins and needles sensation to his knees bilaterally. Dr. Novack noted the claimant ambulated safe and functional without an assistive device. Neurological examination of the lumbar region was unremarkable, and musculoskeletal examination was within normal limits. X-rays of the lumbosacral spine showed mild right scoliosis and minor degenerative changes with minimal marginal osteophyte formation, but no other significant degenerative changes were noted. Dr. Novack opined that claimant was not totally disabled from any and all types of work. (Exhibit 2F).

(Tr. 27.)

changes were mild. (Tr. 185.) Indeed, Dr. Hein stated that "[t]he impression is that this individual has multiple orthopedic complaints with *essentially normal physical examination.* . . . Other than [tremor, minimal discoordination,] and the decreased neck motion we found no evidence of physical impairment." (*Id.* (emphasis added).) Claimant points to nothing in the record indicating that his back problems should limit him to light work. Based upon the record, the Court concludes that the ALJ's determination that claimant can perform heavy to very heavy work was supported by substantial evidence.[9]

**SO REPORTED AND RECOMMENDED** this  2nd  day of July, 2009.

/s/ **G.R. SMITH**
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[9] At most, the record supports a finding that claimant be limited to moderate work. Under the grids, a claimant of advanced age, limited education, and who has previously done semiskilled work but has no transferrable skills would not be disabled. 20 C.F.R. § 404, Subp't P. Appx. 2, Rule 203.12. Indeed, the guidelines note that "[t]he functional capacity to perform medium work represents such substantial work capability at even the unskilled level that a finding of disabled is ordinarily not warranted in cases where a severely impaired person retains the functional ability to perform medium work." 20 C.F.R. § 404, Subp't P. Appx. 2, Rule 203.00(b). The Court is convinced that the ALJ's determination is supported by substantial evidence, but even if he reached the wrong conclusion as to claimant's residual functional capacity, remand would not be warranted because at the medium exertional level, he still would not be disabled under the grids. *See Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) (citing *Diofrio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).